# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, a North Dakota corporation, | CIVIL NO. 2:09-cv-01120-RSM |
| Plaintiff, | |
| v. | **DECLARATION OF TIMOTHY E. ALLEN IN SUPPORT OF PLAINTIFF INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |
| TRANSFORM LLC, a Washington Corporation; EQUILATERAL HOLDINGS LLC, a Washington Corporation; EAST AHM LLC, a Washington Corporation; and HANSELL MITZEL LLC, a Washington Corporation, | |
| | **NOTED ON MOTION CALENDAR:** <u>March 12, 2010</u> |
| Defendants. | |

TIMOTHY E. ALLEN, being first duly sworn on oath, deposes and states:

1.      I am an attorney at Bennett, Bigelow and Leedom, PS ("BB&L"), and counsel for Plaintiff Indian Harbor Insurance Company.  I am over the age of eighteen and competent to testify as to the matters set forth herein.  This Declaration is in support of Plaintiff Indian Harbor Insurance Company's Motion for Summary Judgment and is based on personal knowledge.

2.      The copy of the Construction Contract between East AHM and Transform, attached hereto as Exhibit 2, was produced to me during pre-litigation discovery by counsel for

DECLARATION OF TIMOTHY E. ALLEN IN SUPPORT OF PLAINTIFF INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
2:09-cv-01120-RSM
Page 1

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511 / F: (206) 622-8986

East AHM and Hansell Mitzel, and was characterized as the contract between the parties with respect to the claim filed by East AHM and Hansell Mitzel.

3.  The two invoices attached hereto as Exhibit 3 were provided by East AHM and Hansell Mitzel to Indian Harbor as part of a set of documents reflecting the alleged cost of repair and replacement of the Transform/Equilateral Holdings building modules that East AHM and Hansell Mitzel claim were defective.

4.  Attached hereto as Exhibits are true and correct copies of the following:

Exhibit 1:  Indian Harbor Policy Number ESG002225001, Bates-range TR00001-TR00078.

Exhibit 2:  Emails between Tim Allen and Zak McIsaac dated July 29, 2009, with copy of Construction Contract received as attachment to McIsaac email to Allen, Bates-range TR00082-TR00094.

Exhibit 3:  General Liability Notice of Occurrence/Claim dated May 21, 2009, Bates-range TR00079-00081.

Exhibit 4:  Initial Determination of Non-Coverage and Reservation of Rights, dated June 26, 2009, Bates-range TR00095-00103.

Exhibit 5:  Declaration of Service on Equilateral Holdings LLC of First Amended Complaint for Declaratory Judgment Regarding Insurance Coverage, Bates-number TR00106.

Exhibit 6:  Declaration of Service on Transform LLC of First Amended Complaint for Declaratory Judgment Regarding Insurance Coverage, Bates-number TR00107.

Exhibit 7:  July 8, 2009 letter of Tim Allen to Zak McIsaac, *sans* attachments, Bates-range TR00104-TR00105.

Exhibit 8:  Invoices for costs of material and services East AHM and Hansell Mitzel allege were made necessary because of allegedly defective building modules received by East AHM/Hansell Mitzel from

DECLARATION OF TIMOTHY E. ALLEN IN SUPPORT
OF PLAINTIFF INDIAN HARBOR INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT
2:09-cv-01120-RSM
Page 2

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511 / F: (206) 622-8986

Transform/Equilateral Holdings, dated August 1, 2008 and August

31, 2008, Bates-range TR00108-TR00109.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE

OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at SEATTLE, WASHINGTON, this 18th day of February, 2010.

By /s/ Timothy E. Allen
Timothy E. Allen, WSBA #35337
Attorney for Plaintiff Indian
Harbor Insurance Company

{1929.00018/M0092721.DOC; 1}

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511 / F: (206) 622-8986

# EXHIBIT 1



# INDIAN HARBOR INSURANCE COMPANY

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
CT Corporation System
314 East Thayer Avenue
Bismarck, ND 58501-4018
(800) 688-1840

---

## Commercial Lines Policy

## Common Policy Declarations

---

**NOTICE:** This contract is registered and delivered as a Surplus Line Coverage under the Insurance Code of the State of Washington, enacted in 1947. It is not issued by a company regulated by the Washington State Insurance Commissioner and is not protected by any Washington State Guaranty Fund Law.

> "This contract is registered and delivered as a surplus line coverage under the insurance code of the State of Washington, enacted in 1947. It is not issued by a company regulated by the Washington State Insurance Commissioner and is not protected by any Washington State Guaranty Fund Law" Risk Placement Services Insurance, Insurance Brokers

**Policy Number:** ESG002225001
**Renewal of:** ESG002225000

**Named Insured:** TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC  *TCAIII # 142*
**Address:** 11857 BAY RIDGE DRIVE
**City/State/Zip:** BURLINGTON WA 98223
**Policy Period:**
**From:** February 13, 2008      **To:** February 13, 2009
at 12:01 A.M., Standard Time at your mailing address shown above.

**Business Description:** MANUFACTURING - MODULAR HOMES & BUILDING STRUCTURES

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**PREMIUM**

| Coverage | Premium | | |
|---|---|---|---|
| Commercial Property Coverage Part | $ | | |
| Commercial General Liability Coverage Part | $ 51,606.00 | | |
| Commercial Crime Coverage Part | $ | | |
| Commercial Inland Marine Coverage Part | $ | | |
| Commercial Automobile Coverage Part | $ | | |
| Boiler and Machinery Coverage Part | $ | | |
| Taxes/Surcharges | $ 0.00 | Premium: | $51,606.00 |
| Inspection Fee | $ 175.00 | Company Fee: | $ 175.00 |
| | | Broker Fee: | $ 2,750.00 |
| Policy Premium: | $ 51,606.00 | State Tax: | $ 1,090.62 |
| Premium For Certified Acts of Terrorism: | $ Excluded | Stamping Fee: | $ 136.33 |
| Premium For Non-Certified Acts of Terrorism: | $ Excluded | Total Premium: | $55,757.95 |

---

IHIC-ESLCPD2 04/06        Page 1
© 2006, XL America, Inc.

TR 00001



# INDIAN HARBOR INSURANCE COMPANY

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
CT Corporation System
314 East Thayer Avenue
Bismarck, ND 58501-4018
(800) 688-1840

## Commercial Lines Policy
## Common Policy Declarations

**NOTICE:** This contract is registered and delivered as a Surplus Line Coverage under the Insurance Code of the State of Washington, enacted in 1947. It is not issued by a company regulated by the Washington State Insurance Commissioner and is not protected by any Washington State Guaranty Fund Law.

Policy Number:      ESG002225001
Renewal of:      ESG002225000

Named Insured:      TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC
Address:      11857 BAY RIDGE DRIVE
City/State/Zip:      BURLINGTON WA 98223
Policy Period:
From: February 13, 2008      To: February 13, 2009
     at 12:01 A.M., Standard Time at your mailing address shown above.

Business Description: MANUFACTURING - MODULAR HOMES & BUILDING STRUCTURES

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM | |
|---|---|---|
| Commercial Property Coverage Part | $ | |
| Commercial General Liability Coverage Part | $ | 51,606.00 |
| Commercial Crime Coverage Part | $ | |
| Commercial Inland Marine Coverage Part | $ | |
| Commercial Automobile Coverage Part | $ | |
| Boiler and Machinery Coverage Part | $ | |
| Taxes/Surcharges | $ | 0.00 |
| Inspection Fee | $ | 175.00 |
| Policy Premium: | $ | 51,606.00 |
| Premium For Certified Acts of Terrorism: | $ | Excluded |
| Premium For Non-Certified Acts of Terrorism: | $ | Excluded |

IHIC-ESLCPD2 04/06
© 2006, XL America, Inc.

Page 1

Insured Copy

TR 00002

Form(s) and Endorsements(s) made a part of this policy at time of issue *:

* Omits applicable Forms and Endorsements if shown in specific Coverage Part / Coverage Form Declarations.

Broker Name:     Risk Placement Services, Inc.
Address:         8700 E Northsight Blvd Ste 100
City/State/Zip:  Scottsdale, AZ 85260

Countersigned: _____    By _____

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

TR 00003

A  ř

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: ESG002225001

Effective Date: February 13, 2008,**
12:01 A.M., Standard Time

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit | $ 2,000,000 | |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here: _____

(Enter Date or "None" if no Retroactive Date applies)

## BUSINESS DESCRIPTION

Form of Business: ☐Individual  ☐Partnership  ☐Joint Venture  ☐Trust  ☒Limited Liability Company

☐Organization, including a Corporation (but not including a Partnership, Joint Venture or Limited Liability Company)

Business Description*: Manufacture of Modular Homes & Buildings Structures.

## PREMIUM

| Location No. | Classification | Class Code | Premium Base | Rate Prem/Ops | Rate Prod/Co Op | Advance Premium Prem/Ops | Advance Premium Prod/Co Op |
|---|---|---|---|---|---|---|---|
| 1 | Modular Units Mfg | 57146 | s) First 9,000,000 | Included | 5.734 | $Included | $51,606 |
| 1 | Modular Units Mfg | 57146 | s) Excess of 9,000,000 | Included | 3.842 | $Included | $To be determined @ audit |

Policy Subject to Audit

Total Advance Premium          $51,606

Premium Base:
Admissions (per 1,000 Admissions)
Area (per 1,000 Square Feet)
Each
Gallons (per 1,000 Gallons)
Gross Sales (per $1,000 Gross Sales)
Payroll (per $1,000 Payroll)
Total Cost (per $1,000 Total Cost)
Units

*Information omitted if shown elsewhere in the policy.

**Inclusion of date optional.

GL MP 7000 1104

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2000.

**LOCATION OF PREMISES***

Location of All Premises You Own, Rent or Occupy:

Location No.     Address

01               11857 Bay Ridge Drive, Burlington, WA 98233-3613

*Information omitted if shown elsewhere in the policy.                                    **Inclusion of date optional.

GL MP 7000 1104

    Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2000.

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

| | |
|---|---|
| Endorsement No. 001<br>IL MP 9104 0906 IHIC | In Witness Endorsement |
| Endorsement No. 002<br>ESL 453 0107 | Deductible Endorsement (Including Defense Costs, Expenses And Other Supplementary Payments) |
| CG00011204 | Commercial General Liability Coverage Form - Occurrence |
| Endorsement No. 003<br>ESL 436 0606 | Products-Completed Operations Hazard Scheduled Product Of Work |
| Endorsement No. 004<br>ESL 454 0707 | Classification Limitation |
| CG21490999 | Total Pollution Exclusion Endorsement |
| Endorsement No. 005<br>ESL 669 0406 | Asbestos Exclusion |
| CG04421103 | Stop Gap - Employers Liability Coverage Endorsement - Washington |
| CG21470798 | Employment-Related Practices Exclusion - CGL |
| CG00670305 | Exclusion - Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information |
| CG21960305 | Silica Or Silica-Related Dust Exclusion |
| CG21530196 | Exclusion - Designated Ongoing Operations |
| CG21340187 | Exclusion - Designated Work |
| CG21360305 | Exclusion - New Entities |
| Endorsement No. 006<br>ESL 618 0106 | Cancer Exclusion |
| Endorsement No. 007<br>ESL 659 0106 | Intellectual Property Rights (Including Advertising Injury) Exclusion |
| Endorsement No. 008<br>ESL 663 0106 | Electromagnetic Force (EMF) Exclusion |
| Endorsement No. 009<br>ESL 679 1106 | Aircraft Products And Grounding Exclusion |
| Endorsement No. 010<br>ESL 682 0907 | Cross Claim Exclusion |
| Endorsement No. 011<br>ESL 623 0406 | Employer's Liability Exclusion Modified |
| Endorsement No. 012<br>ESL 643 0406 | Lead Exclusion |

*Information omitted if shown elsewhere in the policy.                                    **Inclusion of date optional.

GL MP 7000 1104            Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2000.

Insured Copy

| FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy) | |
|---|---|
| Endorsement No. 013<br>ESL 661 0406 | Microorganisms Or Biological Organisms Exclusion (Including Mold, Bacteria And Viruses) |
| Endorsement No. 014<br>ESL 668 0707 | Punitive, Exemplary Or Multiplied Damages Exclusion |
| CG20150704 | Additional Insured - Vendors |
| CG24260704 | Amendment Of Insured Contract Definition |
| Endorsement No. 015<br>ESL 050 0907 | Premium Audit Conditions Amended |
| Endorsement No. 016<br>ESL 404 0106 | Minimum Earned Premium Endorsement |
| CG32200107 | Washington Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act) |
| IL00210702 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| CG21751202 | Exclusion Of Certified Acts Of Terrorism And Other Acts Of Terrorism |
| IL00171198 | Common Policy Conditions |
| Endorsement No. 017<br>PN CW 02 05 05 | Notice To Policyholders - Privacy Policy |
| Endorsement No. 018<br>PN CW 05 01 06 | Notice To Policyholders - U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") |
| Endorsement No. 019<br>PN10 11 06 TR | Notice To Policyholders Potential Restrictions Of Terrorism Coverage |
| Endorsement No. 020<br>XL-WASOP 02 07 | Washington Service Of Process |

LEON    03/18/2008
BEDN    0005088025

*Information omitted if shown elsewhere in the policy.

**Inclusion of date optional.

GL MP 7000 1104      Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2000.

Insured Copy

# IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY
ADMINISTRATIVE OFFICE: SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE: CT CORPORATION SYSTEMS
314 EAST THAYER AVENUE
BISMARCK, ND 58501-4018

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dennis P. Kane
President

Kenneth P. Meagher
Secretary

IL MP 9104 0906 IHIC
BEDN 03/18/2008

Insured Copy

TR 00008

## ENDORSEMENT #002

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEDUCTIBLE ENDORSEMENT
## (INCLUDING DEFENSE COSTS, EXPENSES AND OTHER SUPPLEMENTARY PAYMENTS)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

| SCHEDULE | | | |
|---|---|---|---|
| Coverage | Amount and Basis of Deductible | | |
| | PER CLAIM or | PER OCCURRENCE or | PER OFFENSE |
| Bodily Injury Liability | $ | $ | N/A |
| Property Damage Liability | $ | $ | N/A |
| Bodily Injury Liability and/or Property Damage Liability Combined | $5,000 | $ | N/A |
| Personal and Advertising Injury Liability | $ | N/A | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury", "property damage" and "personal and advertising injury", however caused, and to all associated defense costs, expenses and other payments specified under the Supplementary Payments Section of this Policy.):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability and Personal and Advertising Injury (if applicable) Coverages to pay damages on your behalf, and to pay all associated defense costs, expenses and other payments specified under the Supplementary Payments Section of this Policy, applies only to the amount of damages and associated Supplementary Payments in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim, per "occurrence" or per offense basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 453 0107
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00009

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   **Bodily Injury and Property Damage Liability**

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";
   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or
   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";
      (2) "Property damage"; or
      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

   **Personal and Advertising Injury Liability**

   Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person or organization because of "personal and advertising injury" as the result of any one offense. For the purpose of applying this deductible, the same or similar offenses causing damages to a single person or organization shall be considered one offense.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";
   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or
   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";
      (2) "Property damage"; or
      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. **PER OFFENSE BASIS.** If the deductible amount indicated in the Schedule above is on a per offense basis, that deductible amount applies to all damages because of "personal or advertising injury" resulting from any one offense committed during the policy period. For the purpose of applying this deductible, the same or similar offenses committed during the policy period causing damages to a single person or organization shall be considered one offense.

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and
   2. Your duties in the event of an "occurrence", offense, claim, or "suit"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 453 0107
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

E. It is your responsibility to reimburse us promptly for any deductible amount paid by us on behalf of any insured, including any amount paid on behalf of any additional insured. If you do not promptly reimburse us for any deductible amount owed, then any costs incurred by us to collect the deductible will be added and applied in addition to the applicable deductible amount. Such costs include but are not limited to collection agency fees, attorneys' fees and interest.

F. In addition to the damages stated in Section B. above, the deductible amount shall include all associated defense costs, expenses and other payments specified under the Supplementary Payments Section of this Policy.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 453 0107
© 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © ISO Properties, Inc.,2003

TR 00012

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

© ISO Properties, Inc., 2003

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

TR 00014

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

TR 00015

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

TR 00016

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

TR 00017

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

   We will not pay expenses for "bodily injury":

   a. Any Insured

      To any insured, except "volunteer workers".

   b. Hired Person

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. Injury On Normally Occupied Premises

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. Workers Compensation And Similar Laws

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. Athletics Activities

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. Products-Completed Operations Hazard

      Included within the "products-completed operations hazard".

   g. Coverage A Exclusions

      Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

© ISO Properties, Inc.,2003

TR 00018

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage C;

    **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage A; and

    **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1.** Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

TR 00020

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

© ISO Properties, Inc.,2003

TR 00021

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

© ISO Properties, Inc.,2003

TR 00022

c. All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in **a.** above;

    **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

TR 00023

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

© ISO Properties, Inc.,2003

TR 00024

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

TR 00025

**ENDORSEMENT #003**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRODUCTS-COMPLETED OPERATIONS HAZARD SCHEDULED
PRODUCT OR WORK**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

This insurance applies only to "bodily injury" and "property damage" arising out of "your product" or "your work" shown in the Schedule below.

Your Product:
MANUFACTURING OF MODULAR BUILT STRUCTURES

Your Work:
MANUFACTURING OF MODULAR BUILT STRUCTURES

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

ESL 436 0606
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00026

**ENDORSEMENT #004**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

This insurance applies **only to** operations that are classified or shown on the Declarations or specifically added by endorsement to this Policy.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 454 0707
©, 2007, XL America, Inc.
BEDN  03/18/2008

Insured Copy

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.  **Pollution**

   (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   (2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

TR 00028

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ASBESTOS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to:

(1) Any "injury, damage, loss or expense" based upon or arising out of the actual or alleged existence, presence, inhalation, absorption or ingestion of, or the contact with, exposure to or use of "asbestos".

This includes, but is not limited to the following:

a. The installation, storage or handling of "asbestos";
b. The manufacture, distribution, sale, application, mining, consumption, or disposal of "asbestos" or goods or products containing "asbestos";
c. The removal, abatement, containment, treatment, transportation or disposal of "asbestos";
d. The presence or alleged presence of "asbestos" in any structures, manufacturing processes, or products, or in the soil or groundwater; or
e. Any directions, supervision, instructions, recommendations, warnings or advice given or which should have been given with respect to "asbestos".

(2) Any loss, cost or expense arising out of any:

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "asbestos"; or
b. Claim or "suit" by or on behalf of a governmental entity or others for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "asbestos".

This exclusion applies regardless of whether the insured or others manufactured, distributed, sold, installed, or in any way handled, used stored or controlled the "asbestos" and regardless of whether the alleged or actual presence of "asbestos" contributed concurrently or in any sequence to any "injury, damage, loss or expense".

As used in this endorsement, the following definitions apply:

"Asbestos" means any form of the mineral known as asbestos or any form of impure magnesium silicate, including but not limited to any material, waste, equipment or device containing asbestos, or any dust or particles containing asbestos, whether or not the asbestos is friable and whether or not the asbestos is in or on any structure or in the soil or groundwater.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1

ESL 669 0406
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00029

"Injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement applies, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", medical expenses or any other coverages as may be defined under this Coverage Form, Policy or any applicable endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 669 0406
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00030

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SCHEDULE

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | 1,000,000 | Each Accident |
| Bodily Injury By Disease | $ | 2,000,000 | Aggregate Limit |
| Bodily Injury By Disease | $ | 1,000,000 | Each Employee |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. The following is added to Section I – Coverages:

COVERAGE – STOP GAP – EMPLOYERS LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

      (1) The:

         (a) "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

         (b) "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

         (c) "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

      (2) The:

         (a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

         (b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

   c. The damages we will pay, where recovery is permitted by law, include damages:

      (1) For:

         (a) Which you are liable to a third party by reason of a claim or "suit"

Copyright, ISO Properties, Inc., 2003

against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

(b) Care and loss of services; and

(c) Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2) Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

2. **Exclusions**

This insurance does not apply to:

a. **Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

b. **Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

c. **Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

d. **Contractual Liability**

Liability assumed by you under any contract or agreement.

e. **Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the

actual knowledge of any of your "executive officers".

f. **Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

g. **Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1) Deprived of common law defenses; or

(2) Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

h. **Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1) Knowingly employed by you in violation of any law as to age; or

(2) Under the age of 14 years, regardless of any such law.

i. **Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

(1) The Federal Employer's Liability Act (45 USC Section 51-60);

(2) The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

(3) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

(4) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

(5) The Defense Base Act (42 USC Sections 1651-1654);

(6) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

Copyright, ISO Properties, Inc., 2003

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Supplementary Payments** provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages A and B.

**C.** For the purposes of this endorsement, **Section II – Who Is An Insured**, is replaced by the following:

If you are designated in the Declarations as:

**1.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**2.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**3.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**4.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, **Section III – Limits Of Insurance**, is replaced by the following:

**1.** The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

**3.** The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

**4.** Subject to Paragraph D.3. of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.** For the purposes of this endorsement, Condition 2. – Duties In The Event Of Occurrence, Claim Or Suit of the Conditions Section IV is deleted and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

Copyright, ISO Properties, Inc., 2003

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

(5) Do nothing after an injury occurs that would interfere with our right to recover from others.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

F. For the purposes of this endorsement, Paragraph 4. of the **Definitions** Section is replaced by the following:

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

G. The following are added to the **Definitions** Section:

1. "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

2. "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

3. "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

H. For the purposes of this endorsement, the definition of "bodily injury" does not apply.

Copyright, ISO Properties, Inc., 2003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. **Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. **Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc.,2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

  2. **Exclusions**

    This insurance does not apply to:

    **Silica Or Silica-Related Dust**

    a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

    b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

  2. **Exclusions**

    This insurance does not apply to:

    **Silica Or Silica-Related Dust**

    a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

    b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C. The following definitions are added to the Definitions Section:

  1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

  2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

TR 00037

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description of Designated Ongoing Operation(s):**

THE CONSTRUCTION OR ERECTION OF YOUR PRODUCT AT THE CUSTOMER'S SITE
BY YOU, YOUR EMPLOYEES OR ANY SUBCONTRACTOR HIRED BY YOU.

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):
This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".
For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Copyright, Insurance Services Office, Inc., 1994

TR 00038

CG 21 34 01 87

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**
THE CONSTRUCTION OR ERECTION OF YOUR PRODUCT AT THE CUSTOMER'S SITE
BY YOU, YOUR EMPLOYEES OR ANY SUBCONTRACTOR HIRED BY YOU.
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1986

TR 00039

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II – Who Is An Insured** does
not apply.

© ISO Properties, Inc., 2004

TR 00040

## ENDORSEMENT #006

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CANCER EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to all coverage parts of this Policy and any other coverage parts added by endorsement:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", medical payments or any coverages provided by endorsement based upon or arising out of any action or inaction on the part of any insured or any others acting on behalf of any insured or for whom any insured is responsible which results in or contributes to the growth of any cancerous cells in any person or any other growths or tumors which could result in cancer.

All other Terms and Conditions of this insurance remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 618 0106
© 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

## ENDORSEMENT #007

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### INTELLECTUAL PROPERTY RIGHTS (INCLUDING ADVERTISING INJURY) EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Coverage for "advertising injury" is deleted from Section I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY.**

This Policy does **not** insure against any loss, damages or expense based upon or arising out of "advertising injury" under Coverage B or any other Coverage Part of this Policy or any endorsement attached thereto.

As used in this Endorsement, "advertising injury" includes but is not limited to:

(1) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(2) Oral or written publication, in any manner, of material that violates a person's right of privacy;

(3) The use of another's advertising idea in your "advertisement"; or

(4) Infringing upon another's copyright, trade dress or slogan in your "advertisement".

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 659 0106
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

## ENDORSEMENT #008

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ELECTROMAGNETIC FORCE (EMF) EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", medical expenses or any other coverages provided by endorsement based upon or arising out of "electromagnetic radiation", including but not limited to "electromagnetic radiation" produced or distributed by or coming from the following:

(1) any type of lines or towers used to transmit electrical current of any voltage, such as power or electrical lines or towers, or used to broadcast or transmit any type of signal, including but not limited to cellular, radio or television lines or towers or satellite stations;

(2) any type of device which uses, produces, directs, amplifies or conducts "electromagnetic radiation", including but not limited to cellular phones, computers, electric blankets and microwave ovens, X-ray machines, lasers, range finding equipment, laser-equipped surveying equipment, electrical transformers, antennas and satellite and radar dishes.

(3) any type of radar, radar-guided weapons system, radar detecting weapons system or directed energy weapons system, including police, military or weather radar, and any laser, laser weapons system and high electromagnetic pulse (EMP) weapons system;

(4) any type of imaging equipment whether used for medical, ground imaging or other purposes, including but not limited to X-ray and magnetic resonance imaging equipment and ground penetrating radar.

This exclusion applies regardless of whether any other factor contributed concurrently or in any sequence to any loss, damages or expense.

"Electromagnetic radiation" includes but is not limited to electrical or magnetic fields of 30 Hz to 300 EHz, or any combination of magnetic fields, charges, currents, signals or force of energy, radiation or electricity.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 663 0106
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00043

**ENDORSEMENT #009**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusions are **added** to Paragraph 2. Exclusions under SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to "bodily injury" or "property damage" arising out of the "products-completed operations hazard" relating to:

(1) Aircraft (including missiles or spacecraft) and any ground support or control equipment used therewith;

(2) Any other goods or products manufactured, sold, handled or distributed by the "insured" or any services provided or recommended by the "insured" or by others trading under the "insured's" name for use in the manufacture, repair, operation or use of any aircraft;

(3) Any articles furnished by the "insured" or by others trading under the "insured's" name and installed in aircraft or used in connection with aircraft or for spare parts for aircraft including but not limited to ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other advice or service relating to aircraft and any labor relating to such aircraft or articles.

This insurance does not apply to "bodily injury" or "property damage" arising out of the "grounding" of any aircraft.

For the purposes of this endorsement, "grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft, or any part thereof sold, handled or distributed by the "insured" or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawings of the "insured" or with tools, machinery or other equipment furnished to such persons or organizations by the "insured", whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations. A "grounding" shall be deemed to commence on the date of an "occurrence" which discloses such condition or on the date an aircraft is first withdrawn from service on account of such condition, whichever occurs first.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 679 1106
© 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

ENDORSEMENT #010

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS CLAIM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph **2. Exclusions** under SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to any claim or "suit" brought by one Named Insured under this policy against another Named Insured under this policy.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 682 0907
© 2007, XL America, Inc.
BEDN 03/18/2008

Insured Copy

## ENDORSEMENT #011

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EMPLOYER'S LIABILITY EXCLUSION MODIFIED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The **Employer's Liability** Exclusion of Paragraph **2. Exclusions** under **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**Employer's Liability**
"Bodily injury" to:
**(1)** An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(a) Whether the insured may be liable as an employer or in any other capacity; and
(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

As respects this exclusion only, the definition of "Employee" in **SECTION V – DEFINITIONS** is replaced by the following:

**"Employee"** shall include, but is not limited to, a "leased worker", a "temporary worker" and any person hired by, contracted for, or loaned, leased or volunteering services to the insured, whether or not paid by the insured.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 623 0406
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

**ENDORSEMENT #012**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LEAD EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any "injury, damage, loss or expense":

Based upon or arising out of:

(1) Exposure to "lead", "lead" paint or any material containing "lead" or "lead" paint, including but not limited to the ingestion, inhalation or absorption of "lead" in any form; or

(2) The existence, removal or abatement of "lead", "lead" paint, or any material containing "lead" or "lead" paint, including without limitation:

    (a) The costs of "lead" or "lead" paint removal; or

    (b) "Property damage" or any other injury or damage suffered in the course of effecting such removal.

As used in this Endorsement, the following definitions apply:

"Lead" means the metallic element known as lead, including but not limited to any material, waste, equipment or device containing lead, or paint containing lead or any dust, particles or paint chips containing lead, regardless of whether such lead is in or on any structure or in the soil or groundwater.

"Injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement applies, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", medical expenses or any other coverages as may be defined under this Coverage Form, Policy or any applicable endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 643 0406
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

TR 00047

## ENDORSEMENT #013

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MICROORGANISMS OR BIOLOGICAL ORGANISMS EXCLUSION
### (INCLUDING MOLD, BACTERIA AND VIRUSES)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to any "injury, damage, loss or expense":

1.  Based upon or arising out of the existence, presence, growth or formation of, or the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any "microorganisms or biological organisms" or any materials containing "microorganisms or biological organisms" at any time.

    This exclusion applies regardless of the cause of growth, proliferation or spread of such "microorganisms or biological organisms" and regardless of whether the existence, presence, growth or formation of, or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any "microorganisms or biological organisms" contributed concurrently or in any sequence to any "injury, damage, loss or expense".

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "microorganisms or biological organisms" or any materials containing "microorganisms or biological organisms"; or

    b.  Claim or "suit" by or on behalf of a governmental entity or others for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "microorganisms or biological organisms".

As used in this Endorsement, the following definitions apply:

"Microorganisms or biological organisms" means any microorganisms or biological organisms, viruses, bacteria, bioaerosols, organic contaminants, or genetically modified organisms, including but not limited to mold, mildew, fungus, spores, yeast, toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust.

"Injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement applies, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", medical expenses or any other coverages as may be defined under this Coverage Form, Policy or any applicable endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 661 0406
©, 2006, XL America, Inc.
BEDN 03/18/2008

Insured Copy

**ENDORSEMENT #014**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE, EXEMPLARY OR MULTIPLIED DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

This insurance does not apply to punitive, exemplary or multiplied damages.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 668 0707
© 2007, XL America, Inc.
BEDN 03/18/2008

Insured Copy

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| WILLIAMS SCOTSMAN, INC.<br>1600 CHRISTENSEN ROAD<br>SUITE 250<br>TUKWILA, WA 98188 | MOBILE/TEMPORARY OFFICE TRAILERS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its

Copyright, ISO Properties, Inc., 2004

employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(1)** The exceptions contained in Subparagraphs d. or f.; or

**(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

TR 00051

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 9. of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

Copyright, ISO Properties, Inc., 2004

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

The Premium Audit Conditions under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, **SECTION IV – CONDITIONS, SECTION IV – PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** and **SECTION IV – LIQUOR LIABILITY CONDITIONS** are replaced by the following:

**Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

The advance premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

We may conduct an audit of your books to determine the actual premium bases developed during the policy period. The premium bases and minimum payroll for executive officers, individual insureds, and co-partners used are defined in accordance with our rules and definitions.

b. Premium shown in this Coverage Part as advance premium is a minimum and deposit premium. At the close of each audit period, we will compute the earned premium for that period. If the earned premium is greater than the advance premium paid, an audit premium is due. Audit premiums are due and payable on notice to the first Named Insured. Failure to pay the audit premium(s) due will subject this policy, and/or any in-force policy of yours, to cancellation for non-payment of premium.

If the total earned premium for the policy period is less than the advance premium, such advance premium is the minimum premium for the policy period indicated and is not subject to further adjustment.

If the policy is cancelled prior to the expiration date, we will retain the earned premium by an audit of your books for the period the policy was in-force or the earned premium developed by multiplying the advance premium by the applicable pro-rata or short-rate factor, whichever is greater.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. Failure to supply such records upon request will be deemed a breach of condition and subject this policy, and/or any in-force policy of yours, to cancellation for breach of conditions.

d. We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterwards.

All other terms and conditions of this policy remained unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 050 0907
© 2007, XL America, Inc
BEDN 03/18/2008

Insured Copy

## ENDORSEMENT #016

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MINIMUM EARNED PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

If this insurance is cancelled at your request, there will be a minimum earned premium retained by us of

$ 12,902 or 25 % of the premium for this insurance, whichever is greater.

If no dollar amount or percentage is indicated, the minimum earned premium will be 25% of the premium indicated on the Declarations Page.

If a policy fee, inspection fee or expense constant is applicable to this policy, the fee(s) will be fully earned and no refund of fees will be made.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ESL 404 0106
© 2006, XL America, Inc
BEDN 03/18/2008

Insured Copy

TR 00054

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. **Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you

TR 00055

of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

TR 00056

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

ISO Properties, Inc., 2005

TR 00057

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

Copyright, ISO Properties, Inc., 2001

TR 00058

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2001

TR 00059

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

Copyright, ISO Properties, Inc., 2002

TR 00060

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Copyright, ISO Properties, Inc., 2002

TR 00061

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

TR 00062

## ENDORSEMENT #020

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company

## SERVICE OF PROCESS

The Commissioner of Insurance of the State of Washington is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Kenneth P. Meagher
> General Counsel
> Seaview House
> 70 Seaview Avenue
> Stamford, CT 06902-6040

as its agent in Washington to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

XL-WASOP (02/07)
BEDN 03/18/2008

TR 00063

GU207
(7/99)

## ENDORSEMENT #021

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following change is made to the policy with no change in premium:

Amend ZIP CODE on Form IHIC-ESLCPD2 04/06 – COMMON POLICY DECLARATIONS, which is already attached and made part of this policy to read as follows:

98233

All other terms and conditions of this policy remain unchanged.

Authorized Representative

BEDN 04/11/2008

TR 00064

## ENDORSEMENT #022

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

### THIS ENDORSEMENT CHANGED THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following form changes are made to the policy in accordance with the Terrorism Risk Insurance Program Reauthorization Act of 2007 for no change in premium:

**Delete Form(s) –**

CG 21 75 12 02 – Exclusion of Certified Acts Of Terrorism And Other Acts of Terrorism
PN 10 1106 TR – Notice to Policyholders Potential Restrictions of Terrorism Coverage

**Add Form(s) –**

CG 21 73 01 08 – Exclusion of Certified Acts Of Terrorism
PN 312 0108 TR – General Liability Terrorism Notice to Policyholders

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

TR 00065

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terror-ism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

TR 00066

**GENERAL LIABILITY TERRORISM NOTICE TO POLICYHOLDERS**
**FOR USE WITH: CG 21 73 01 08/CU 21 33 01 08**
**or CG 26 88 01 08/CU 01 62 01 08 (AK)**
**(CERTIFIED ACTS EXCLUSION)**

## RESTRICTIONS OF TERRORISM COVERAGE

This Notice has been prepared in conjunction with the implementation of changes related to coverage of terrorism under your policy. It contains a brief synopsis of significant exclusionary provisions and limitations.

This Notice does **not** form a part of your insurance contract. The Notice is designed to alert you to coverage restrictions and to other provisions in the terrorism endorsement in this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Carefully read your policy, including the endorsements attached to your policy.

## YOUR PREVIOUS POLICY:

The terrorism endorsement in this policy makes a distinction between "certified acts of terrorism" (which is more fully defined in the endorsement, but involves acts of terrorism that are committed by or on behalf of a foreign interest) and "other acts of terrorism". Both types of terrorism are excluded from coverage but the exclusions are subject to different terms and conditions. The exclusion of "certified acts of terrorism" relates to criteria in the federal Terrorism Risk Insurance Act. The exclusion of coverage for "other acts of terrorism" (terrorist acts other than certified acts) applies only if:

(1) Aggregate losses from the event exceed $25 million; or
(2) Fifty or more persons sustain death or physical injury; or
(3) If the event qualified as a nuclear event; or
(4) If the event qualified under certain circumstances as a biological or chemical event.

With respect to "certified acts of terrorism" and "other acts of terrorism", policy exclusions (for example, the war liability exclusion) and other policy provisions continue to apply.

## YOUR RENEWAL POLICY:

This policy contains an endorsement excluding coverage for "certified acts of terrorism", which is more fully defined in the endorsement but involves acts of terrorism certified as such under the federal Terrorism Risk Insurance Program. Refer to the terrorism endorsement for the definition of "certified acts of terrorism". Refer to the endorsement, and to the rest of the insurance contract, for provisions that govern coverage for, or that exclude coverage for, losses arising from terrorism.

© ISO Properties, Inc., 2008

**XL**INSURANCE

## TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007

**On March 28, 2008, a notification was sent to your office** advising you of changes in the Terrorism Insurance Act: (See Below for a summary of these Changes)

**On March 31, 2008, a letter was sent to all Insureds, with a copy to your office,** providing an explanation of the TRIA changes and giving them the opportunity to respond by either accepting or rejecting coverage. The insured was advised in this notification that if no response was received within a 30 day period that we would automatically endorse the policy with the appropriate forms based upon the insured's election made in the initial offer.

**Our records reflect no response from this insured.**

## The enclosed endorsement represents the change to the insured's policy required by the Reauthorization Act based upon the election made by the insured at the initial offer.

### Summary of TRIA Changes requiring this endorsement:

The Terrorism Insurance Act, which was scheduled to expire on December 31, 2007, has been extended by the Federal Government, effective December 26, 2007. This new act is called the Terrorism Risk Insurance Program Reauthorization Act of 2007 **(The Reauthorization Act)** and this act is set to expire on December 31, 2014. The Reauthorization Act continues the participation of the Federal Government (under the Department of the Treasury) along with the insurance industry in the risk of loss from future terrorist attacks.

We must offer Terrorism Coverage to the insured. If the coverage offer is purchased by the insured, we will only provide coverage for Certified Acts of Terrorism, which will be determined by the Secretary of the Treasury (in concurrence with the Secretary of State and the Attorney General of the United States). If the coverage offer is declined by the insured, we will exclude to the extent possible.

Changes in the act included:

- The change in the definition of "terrorism"
- The ability to purchase coverage for "Certified Acts of Terrorism"
- The definition of "Certified Acts of Terrorism"
- The formula for determining the amount of reimbursement by the Federal Government for losses from "Certified Acts of Terrorism"
- The $100 billion cap on coverage for "Certified Acts of Terrorism"
- The time availability to purchase coverage for "Certified Acts of Terrorism".

Should you have any questions, please direct them to your underwriter.

TR 00068

**GU207**
**(7/99)**

**ENDORSEMENT #023**

This endorsement, effective 12:01 a.m., February 13, 2008 forms a part of Policy No. ESG002225001 issued to TRANSFORM, LLC; EQUILATERAL HOLDINGS LLC by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

For a return premium of $17,202, the following change is made to the policy:

GL MP 7000 1104 Commercial General Liability Coverage Part Declarations is amended as follows:

Code 57146 (Modular Units Mfg.)
Premium Basis 6,000,000 (Gross Sales)
Revised Advance Premium $34,404

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

TR 00069



Insurance Policy

TRANSFORM, LLC; EQUILATERAL
HOLDINGS LLC

11857 BAY RIDGE DRIVE
BURLINGTON, WA 98223

Policy Number: ESG002225001
February 13, 2008 - February 13, 2009



## XL EXCESS & SURPLUS
## PROCEDURES FOR CERTIFICATES OF INSURANCE

XL Excess & Surplus Lines contracted wholesale brokers are authorized to issue Certificates of Insurance. Certificates may not be issued on any account prior to binding by XL Excess & Surplus Lines.

The following instructions MUST be adhered to subject to the terms and conditions of the bound policy:

ACORD 25 (8/01) Form:
1. Must reflect the correct named insured and mailing address.
2. Must reflect the correct type of insurance, policy number, policy effective & expiration dates and policy limits.
3. Must reflect the correct writing company – Indian Harbor Insurance Company, XL Select Insurance Company or Greenwich Insurance Company.
4. No alterations to the cancellation clause or special insurance provisions (additional insured status, hold harmless agreements, waivers of subrogation) may be reflected on the certificate without first being sent to your XL E&S Underwriter for review and approval. Failure to adhere to this requirement violates your broker agreement with XL Excess and Surplus Lines.
5. Copies of Certificates of Insurance, issued in accordance with these guidelines by an XL Excess & Surplus Lines contracted wholesale broker, are not required to be submitted to the Company.

Special Certificates (Non-ACORD 25 (8/01) Form):
1. Must be sent to your XL E&S Underwriter for review and approval (including a copy of the contract if applicable) prior to being issued.

XLES COI 05/07

# Claim Reporting

New claims can be reported by phone, fax, mail or email, 24 hours a day, seven days a week, 365 days a year.

| | |
|---|---|
| Phone | 1-800-823-7351 |
| Fax | 610-458-2519 |
| Email | XLEclaims@xlgroup.com |
| Mail | **XL Insurance** |
| | **Attention: Claim Department** |
| | **520 Eagleview Blvd.** |
| | **P.O. Box 636** |
| | **Exton, PA 19341-0636** |

Please include, if available, the name, address and phone number for all relevant parties, the date and time of loss, the location of the loss, a description of the loss, and any damage information.

If reporting by phone, please be sure to indicate if the claim involves a fatality, serious bodily injury, pollution spill, or requires immediate response.

# NOTICE TO POLICYHOLDERS

## PRIVACY POLICY

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information

PN CW 02 0505
BEDN 03/18/2008

Insured Copy

TR 00073

about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

## Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

## Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

TR 00074

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

# U.S TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

Insured Copy

TR 00076

## CG 2187/CU 2144 Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act)
## CG 3214/CU 0182 Alaska Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act)
## CG 3220/CU 0186 Washington Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act)

### NOTICE TO POLICYHOLDERS

### POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE

This Notice has been prepared in conjunction with the **POTENTIAL** implementation of changes related to coverage of terrorism under your policy.

The Terrorism Risk Insurance Act established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. That Program is subject to a termination date of December 31, 2007 unless extended by the federal government. If the federal Program terminates, or is extended with certain changes prior to or during the term of your policy, then the treatment of terrorism under your policy will change. This Notice is being provided to you for the purpose of summarizing potential impact on your coverage. The summary is a brief synopsis of significant exclusionary provisions and limitations.

This Notice does not form a part of your insurance contract. The Notice is designed to alert you to coverage restrictions and to other provisions in certain terrorism endorsement(s) in this policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Carefully read your policy, including the endorsements attached to your policy.

### YOUR POLICY DURING THE TUNURE OF THE TERRORISM RISK INSURANCE PROGRAM AS THAT PROGRAM EXISTS PURSUANT TO THE TERRORISM RISK INSURANCE EXTENSION ACT OF 2005:

The terrorism endorsement in this policy makes a distinction between "certified acts of terrorism" (which is more fully defined in the endorsement, but involves acts of terrorism that are committed by or on behalf of a foreign interest and generate aggregate losses in excess of $5 million) and "other acts of terrorism". Both types of terrorism are excluded from coverage but the exclusions are subject to different terms and conditions. The exclusion of "certified acts of terrorism" relates to criteria in the federal Terrorism Risk Insurance Act. The exclusion of coverage for "other acts of terrorism" (terrorist acts other than certified acts) applies only if:

(1) Aggregate losses from the event exceed $25 million; or
(2) Fifty or more persons sustain death or physical injury; or
(3) If the event qualified as a nuclear event; or
(4) If the event qualified under certain circumstances as a biological or chemical event.

With respect to "certified acts of terrorism" and "other acts of terrorism", policy exclusions (for example, the war liability exclusion) and other policy provisions continue to apply.

PN10 1106 TR
BEDN 03/18/2008

© ISO Properties, Inc., 2006

Insured Copy

**POTENTIAL CHANGE TO YOUR POLICY:**

**Endorsement CG 2187/CU 2144, CG 3214/CU 0182(AK), CG 3220/CU 0186(WA) is attached to your policy. Its provisions become applicable to your policy only if certain events (one or more of them) occur. Those events include the following:**

- If the federal Terrorism Risk Insurance Program (TRIP) terminates with respect to the type of insurance provided under this policy. (TRIP is/was scheduled to terminate at the end of December 31, 2007 unless extended by the federal government.); or
- If TRIP is extended with changes that redefine terrorism, and we are not required to make such revised coverage available to you; or
- If TRIP is extended with changes that make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other events or occurrences under this policy, and we are not required to make such revised coverage available to you; or
- If TRIP is extended with changes that increase insurers' statutory percentage deductible under TRIP for terrorism losses, or decrease the federal government's statutory percentage share in potential terrorism losses, and we are not required to make terrorism coverage available to you. Our deductible in 2006 is 17.5% of the total of our previous year's direct earned premiums. In 2007, that figure is 20%. For losses occurring in 2006, the government's share is 90% of the terrorism losses paid by us above the deductible. For losses occurring in 2007, such share is 85%.

**Endorsement CG 2187/CU 2144, CG 3214/CU 0182(AK), CG 3220/CU 0186(WA) treats terrorism as follows:**

- Coverage for injury or damage arising out of a terrorism incident is excluded only if:

  - The total of all insured damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from the incident, exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

  - Fifty or more persons sustain death or serious physical injury; or

    *(To determine whether the threshold for property damage ($25 million) and persons injured (fifty) is exceeded, multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
  - The terrorism event involves the release of radioactive material, and it appears that one purpose of the terrorism was to release such material; or
  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

**See the definition of terrorism for purposes of the terrorism exclusion.**

PN10 1106 TR
BEDN 03/18/2008

© ISO Properties, Inc., 2006

Insured Copy

# EXHIBIT 2

## Tim E. Allen

| | |
|---|---|
| **From:** | Zachary McIsaac [ZMcIsaac@lawasresults.com] |
| **Sent:** | Wednesday, July 29, 2009 10:21 AM |
| **To:** | Tim E. Allen |
| **Cc:** | Cate R. Brewer |
| **Subject:** | RE: Mitzel v. Transform (1929.018) |
| **Attachments:** | Contract.pdf |

Tim:

Thanks for the confirmation. I anticipate that our agreement includes the fact that neither party will move prior to our discussion on Monday either. If you could confirm that I would appreciate it.

Attached is the contract I referenced in our call. In addition, I have been able to locate Bill "Boo" Marris' cell phone number and have been authorized to pass it along to you – 360.393.6947. This should assist you in contacting your client's insured.

Best regards,
Zak

ZACHARY O. MCISAAC | LAWYER

## Stanislaw Ashbaugh
LAW AS RESULTS

COLUMBIA CENTER | 701 FIFTH AVE | SUITE 4400 | SEATTLE, WA 98104
T. 206.386.5900 | F. 206.344.7400

WWW.LAWASRESULTS.COM

CONFIDENTIALITY: If you have received this email in error please reply to me and delete your copy immediately as this email may contain attorney-client privileged and/or confidential information which should not be reproduced or distributed in any way.

NOTE: This communication is not intended or written by Stanislaw Ashbaugh LLP to be used, and it may not be used by you or any other person or entity, for the purpose of (1) avoiding any penalties that may be imposed on you or any other person or entity under the United States Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. This notice is issued pursuant to Treasury Department Circular 230.

**From:** Tim E. Allen [mailto:TAllen@bbllaw.com]
**Sent:** Wednesday, July 29, 2009 8:52 AM
**To:** Zachary McIsaac
**Cc:** Cate R. Brewer
**Subject:** Mitzel v. Transform (1929.018)

Zach,

I have had a chance to confer with my client. This confirms our agreement reached during our

TR 00082

teleconference on Monday, that neither of us will move this week on the Mitzel v. Transform matter. You said you would forward to me a copy of the contract between your client and Transform that you suggest affects XL's coverage position with respect to Mitzel's claim -- please do so asap, as I would like to review it this week. We agreed to talk again Monday, August 3, 2009.

Thanks,

Tim

Tim E. Allen
Attorney
Bennett Bigelow & Leedom, P.S.
1700 Seventh Ave. Suite 1900
Seattle, WA 98101
T: 206-622-5511
F: 206-622-8986
www.bbllaw.com

## CONFIDENTIALITY NOTICE

The contents of this message may be protected by the attorney-client privilege, work product doctrine or other applicable protection. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please notify the sender via email or telephone at (206) 622-5511.

2/16/2010

**The following items are included in and are part of this contract:**

| | |
|---|---|
| **Schedule A:** | **Price and Payment Terms** |
| **Schedule B:** | **Project Scope, Inclusions, and Exclusions** |
| **Schedule C:** | **Project Schedule and Anticipated Milestone Dates** |
| **Schedule D:** | **Other** |

Ship to:     3770 Suncadia Trail
             Cle Elum, WA
             98922

Deliver F.O.B. <u>Our Factory</u>

**Terms and conditions of Contract accepted by Buyer, including terms on the following pages**

Date: ____6/19/08____

Buyer: <u>East AHM Development LLC.</u>

By: Jeff Hansell _____

Its: <u>Owner</u>

Date: ____6/30/08____

Seller: Transform, LLC

By: Robert Ney_____

Its: <u>Vice President of Project Administration</u>



## THE FOLLOWING PROVISIONS ARE HEREBY MADE A PART OF
## THE CONTRACT FOR SALE OF MODULAR UNITS, AND BUYER AGREES THERETO

1. **Contract's Terms and Conditions Control.** Buyer's acceptance is limited to the express terms of this Contract. Any proposal by Buyer for additional or different terms to this Contract (other than with respect to the description, quantity, price, or delivery schedule of the goods) shall be deemed a material alteration thereof, and this Contract shall be deemed accepted by Buyer without such additional or different terms. Any attempt by Buyer to vary the terms of this Contract as to the description, quantity, price, or delivery schedule of the goods is hereby objected to and rejected by Seller. Any changes to this Contract shall be made in writing, signed by both parties.

2. **Payment.** Buyer shall pay Seller as set forth in the attached Schedule A.

3. **Commencement of Production.** Despite any specified delivery date on page 1 of this Contract, it is an express condition precedent to Seller's obligation to commence production of the modular units for Buyer that Buyer first furnish Seller with appropriate documentation, evidence, and information that at such time as Seller has produced the modular units, they can be immediately removed from Seller's premises and delivered to property on which Buyer has authority to place the modular units. In the event such evidence cannot be furnished, the delivery date specified on page 1 shall be equitably adjusted. If Buyer fails to take delivery of the goods as set forth herein, Seller may require Buyer to pay a storage and transportation fee of $250.00 per day per modular unit for which delivery is not accepted by Buyer. This provision is required due to the limited storage space at Seller's premises, the need to transport excess modular units and the potential risk of loss/damage to the modular units following production if allowed to remain on Seller's premises.

4. **Delays and Extensions of Time.** If Seller is delayed at any time in the commencement or progress of the production of the modular units by an act or neglect of Buyer; or of a separate entity with which Seller contracts; or by changes ordered in the modular units; or by labor disputes; fire; unusual delay in deliveries of materials, equipment, or other items; unavoidable casualties; or other causes beyond the Seller's control, then the time for delivery shall be equitably adjusted, and Seller shall not be liable to Buyer for any damages resulting from such delay.

5. **Warranty.** Seller warrants that the goods furnished hereunder will be free from defects in materials and workmanship for a period of one year from their date of delivery to Buyer. Upon written notice to Seller within the specified one year period, Seller agrees to promptly repair or replace, as necessary, any defect in workmanship or materials for which it is responsible. Seller shall transfer any warranty available and transferable from the original manufacturer of component parts of the goods to the Buyer. THIS REMEDY IS THE EXCLUSIVE REMEDY FOR ANY BREACH BY SELLER.

THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE BUYER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR ANY DELAYS, PERSONAL INJURY, OR DAMAGES TO PROPERTY, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY SELLER OR NEGLIGENCE OF SELLER OR OTHERWISE.

6. **Information Required of Buyer.** Buyer shall, at the written request of Seller, prior to delivery of the goods which are the subject of this Contract, furnish to Seller reasonable evidence that financial arrangements have been made to fulfill the Buyer's obligations under this Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the delivery of the goods which are the subject of this Contract. After such evidence has been furnished, Buyer shall not materially vary such financial arrangements without prior written notice to Seller.





TR 00085

**7. Disputes.**

a. **Accrual of Claims and Causes of Action.** Claims and causes of action by Buyer against Seller pertaining to the goods which are the subject of this Contract shall be deemed to have accrued and the applicable statutes of limitation/limitation period, including the period specified below, shall commence to run not later than the date of delivery of the goods which are the subject of the claims or causes of action.

b. **Limitation Period.** Any claim or cause of action by Buyer against Seller pertaining to the goods which are the subject of this Contract must be commenced in a court of competent jurisdiction within 18 months of the date of delivery by Seller to Buyer of the goods which are the subject of the claim or cause of action. Any unresolved claim or cause of action which is not timely commenced is waived and released by Buyer.

c. **Mediation.** As a condition precedent to the hearing of any trial, the parties shall submit any and all disputes between them to non-binding mediation with the assistance of an experienced mediator. The parties shall each designate a representative with full settlement authority who will participate in the mediation. The parties shall bear equally all expenses, exclusive of attorneys' fees, associated with the mediation.

d. **Fees and Costs.** In any dispute between Buyer and Seller, the prevailing party shall be awarded its reasonable attorneys' fees, experts' fees, and costs.

**8. Risk of Loss.** Buyer assumes the risk of loss of all goods when tendered to Buyer's possession at the destination specified in this Contract.

**9. Entire Agreement.** This Contract constitutes the entire agreement between the parties, and supersedes all previous communications between them, either oral or written.

**10. Severability.** If, but only to the extent that, any provision of this Agreement is declared or found to be illegal, unenforceable or invalid, then, to the full extent permitted by law, (a) the provision found to be illegal, unenforceable or void shall be deemed amended and the Court having jurisdiction shall be requested to reform such provision to the extent necessary to make it legal and enforceable while preserving the intents of the parties reflected therein and (b) such illegality, unenforceability or invalidity will not affect any other provision hereof and this Agreement will be liberally construed in order to carry out the intent of the parties as nearly as possible.



TR 00086

## Schedule A: Payment Terms

**Due at Contract signing to attain First Period labor only:**

**$320,000.00** (Approximately 20% of LABOR COSTS ONLY) covers all start up labor costs, due net 30 from execution of the contract.

Monthly Draws based on a percentage of completion, until the contract amount is paid in full. Contract amount is a fixed lump sum amount which includes labor only. *$76,036.83* of the Fixed Contract amount below covers the labor only to install the hat channel per the current design. If hat channel becomes excluded from Transforms scope of work the full *$76,036.83* which is a fully loaded all inclusive labor number *($66,118.98 base, $9,917.85 mark-up)* will be backed out of the fixed lump sum amount below.

The Fixed Contract Amount is Transform LLC Labor, Overhead and Profit **ONLY**. All Materials are provided by Hansell Mitzel.

## LUMP SUM AMOUNT:    $ 1,600,000 Exclusive of Sales Tax

A liquidated damages clause of $500 per working day, per box for delay in delivery from the mutually agreed upon final delivery date, will be instituted in the contract pertaining to this project. A separate attached signed document stating the final mutually accepted schedule binds.

All payments shall be made payable to "Transform LLC" and will be paid by Buyer check or wire transfer to an account designated by Transform, LLC. All permitting fees paid for by Owner.

*STANDARD RETAINAGE OF 5% WILL BE APPLIED TO ALL PROGRESS PAYMENTS.*

**\*\*\*Note All Pricing is Subject to WA State Sales Tax which is NOT included\*\*\***

TR 00087

## Schedule B: Project Scope, General Inclusions and Exclusions

### See Attached Document as Schedule B.

***Please note that Schedule B reflects a final price that includes ONLY Labor.***

*Note: This is a __general__ Scope of Work supplied to help determine the major items that will be required by the General Contractor at the site to prepare the building for occupancy once the modules are delivered to the site, written for planning purposes only, it is not intended to provide every detail of all the work required.*

TR 00088

## Schedule C: Project Schedule and Anticipated Milestone Dates

Contract acceptance and signing:                              June 13th, 2008

35% design of modular components:

65% design of modular components:

95% design of modular components:

Final design criteria and architectural elements:

Final selection of interior finishes:

Final acceptance of HVAC and electrical design:

Permits submitted for Washington State approval:             May 20th, 2008

Begin production:                                            Estimated - July 1st, 2008

First delivery of modules                                   Estimated - July 18th, 2008

Second delivery of modules                                  Estimated – Sept. 11th, 2008

Final set, on site work and finishes begin                  Estimated - Sept. 12th, 2008

Substantial completion:                                     Estimated - October 30th, 2008

Certificate of Occupancy                                    Estimated - October 30th, 2008



TR 00089

 Your Modular Builder



Proposal & Inclusions For -

# Trailhead Condominiums at Suncadia

3770 Suncadia Trail
Cle Elum, WA
98922

June 13th, 2008



Prepared By:
Transform's Estimating Dept.
11857 Bay Ridge Drive
Burlington, WA 98233

Tel. 360.755.9130 Ext 211
Fax 360.707.0818

www.transform-llc.com

---

OUTLINE SPECIFCATIONS

1

## *TRANSFORM'S* INCLUSION SPECIFCATIONS

**DIVISION SECTIONS BY TITLE**

**DIVISION 1          FLOOR ASSEMBLY**

1 ¾" x 11 7/8" LVL Double Perimeter Rim Joist
2 5/16" x 11 7/8" TJI 230 Floor Joists at 16" O.C
4' x 8' x ¾" T&G OSB as a Sub-Floor
Sub-Floor is Glued and Nailed per Schedule, Acoustical Sealant used at base plates
Fire Sealant Polyurethane Spray Foam
1/2" Homasote or equiv sub-strait - Covers All the Subfloor before walls are set.
ITT3511.88 - 2 5/16" x 11 7/8" Joist Hangers for 360 & 230 by Simpson Strong-Tie
Under Floor Insulation R-21 Unfaced Batt Insulation
Mirafi X-Series Woven Polypropylene Underclosure to secure Insulation

**DIVISION 2          EXTERIOR WALL ASSEMBLY**

2" x 6" DF #2 or BTR Wall Plate Material – Single Bottom and Single Top Plate
2" x 6" DF #2 or BTR 104 5/8" Wall Studs @ 16" O.C UNO– 9' Wall Height
2" x 10" DF #2 or BTR Insulated Box Headers above all Rough Framed Openings where needed
2 ½" Ridged Foam Insulation used in the Box Headers
R-24 Unfaced Batt Insulation at Exterior Walls
4' x 10' x 7/16" OSB Exterior Wall Sheathing
Single Layer of Tyvek Commercial Building Wrap Vapor Barrier for Water Intrusion
4' x 9' x 5/8" Gypsum Based Type "X" Sheetrock Hung (No Mud and/or Tape Included)

**DIVISION 3          WINDOWS & DOORS**

Window Membrane Flashing - Tyvek Flex wrap 8" x 75' - Installed on the Sill of the Window
Window Membrane Flashing - Tyvek Straight Flash 4" x 150' - Top, Sides, & Bottom Flashing
Window Membrane Flashing - Tyvek Sealant CS/12 - Sealing caulk for inside the window
Window Backer Rod - MD Pre-Caulk Backer Rod 3/8" x 20' - Insulating around the inside of the window

**DIVISION 4          INTERIOR WALL ASSEMBLY**

2" x 4" DF #2 or BTR Wall Plate Material – Single Bottom and Single Top Plate
2" x 4" DF #2 or BTR 104 5/8" Wall Studs @ 16" O.C UNO– 9' Wall Height
4' x 9' x 7/16" OSB at all required interior shear walls
4' x 9' x 5/8" Gypsum Based Type "X" Sheetrock Hung (No Mud and/or Tape Included)
RC Channel and Clips Installed Only at Corridor Locations
#10 - 3" - #2 Bugle Head Square Drive Vinyl Coated Deck Screws to Install RSIC Clips
RSIC-1.5" - Adjustable Furring Channel Mount - The Smart Clip
RSIC-1.5" - Adjustable Furring Channel Mount - HAT CHANNEL 20ga 7/8"gr 20ft - 2 1/2" x 1" x 240"
Interior Sound Insulation R-11 on 2x4 walls - Fiberglass Form Free Unfaced Batts
Interior Sound Insulation R-19 on 2x6 walls – Fiberglass Form Free Unfaced Batts

TR 00091

**DIVISION 5          CEILING ASSEMBLY**

Sub-Floor Adhesive - OSI® Pro-Series® SF-450™ Heavy Duty Sub-Floor & Construction Adhesive
1 3/4" x 7 1/4" LVL's - Double Perimeter Rim
2" x 8" DF #2 Ceiling Joist 16" O.C UNO
2" x 8" DF #2 Crush Plate at Perimeter walls and over corridor nailed down through ceiling deck into rim
4' x 8' x 7/16" OSB above Ceiling Joist Sheathing
4' x 8' x 5/8" OSB Crush blocks installed on perimeter wall plate
Ice & Water Shield 3'x 75' – Covers the exterior ceiling deck for water protection
#10 - 3" - #2 Bugle Head Square Drive Vinyl Coated Deck Screws to Install RSIC Clips
RSIC-1.5" - Adjustable Furring Channel Mount - The Smart Clip
RSIC-1.5" - Adjustable Furring Channel Mount - HAT CHANNEL 20ga 7/8"gr 20ft - 2 1/2" x 1" x 240"
4x16x5/8" Interior Gypsum Board - Double Layer on the Lid In Units Only

**DIVISION 6          ROOF ASSEMBLY**

N/A

**DIVISION 7          STAIR ASSEMBLY**

N/A

**DIVISION 8          PLUMBING ASSEMBLY**

Pex and PVC Standard Rough In per Plan
3 ½" Waste Pipe Insulation
Shower Receptor - Tile Redi Waterproof Shower Module - 33" x 60" Model # 3360L
Molded Tub/Shower Combo - Sterling Model # 61041110 - 5' White Bathtub, Vikrell Material, Swirl
Gloss Finish, Overall Size 60" x 30.5" x 15"
Rannai Tankless on demand water heater - Tankless Water Heater 199,000 BTU R94LSi by Rinnai

**DIVISION 9          ELECTRICAL ASSEMBLY**

Basic Rough-In per Plan

**DIVISION 10          HVAC / MECHANICAL ASSEMBLY**

Rinnai Air Handler Unit - Series 37AHA - Model #04508 - Installed in ONLY Type "A" Units
Rinnai Air Handler Unit - Series 37AHA - Model #06012 - Installed in all Standard Type "B" Units
Dryer Rough In Box - DBX1000 Plastic Dryer Vent Box with Snap on Trim Ring

**DIVISION 11          FIRE SUPPRESION ASSEMBLIES**

N/A

TR 00092

**DIVISION 12**        *INTERIOR FINISHES ASSEMBLY*

    N/A

**DIVISION 13**        *APPLIANCES*

    N/A

**DIVISION 14**        *SHIP LOOSE ITEMS*

    N/A

**DIVISION 15**        *PROJECT EXCLUSIONS – items not seen above are Excluded from this Proposal*

Site Work & Utility Hook-Ups
Foundation, Site Plumbing, Electrical, & HVAC
Fire Alarm & Sprinkler
Finished Flooring
Mud, Tape, Texture, PVA, & Paint
Exterior Metal Flashing, Trim & Siding
Truss and Roof Assembly (Rough or Finish)
All Exterior Doors Slider or Swing
All Interior Doors
Window Supply
All Casework & Millwork
Closet Shelving
Electrical Fixtures & Trim
Plumbing Fixtures & Trim
HVAC & Mechanical Building Fixtures or Trim
Gas Line Piping
Appliances
L&I Inspection Fees

TR 00093

## Client Selections:

Client will be allowed the following allowances and selections:

An allowance is a fixed dollar amount, set by the manufacturer for the client to buy his or her own specific item(s) for the project. If the client spends over the allowance the difference must be paid by the client. If less is spent a credit will be issued by the manufacturer.

A selection does not contemplate a monetary value issue, but rather enables the client to select a color or style from the manufacturers list of choices (i.e. carpet color).

### Allowances (All Modules)
Items listed below have a noted dollar amount due to lack of exact pricing at time of Proposal

1. Est. Delivery, Set & Stitch: $225,675.00 (This Number is NOT Included in the Final Price Reflected Below)

### Selections (All Modules)
1. Carpet color / style – N/A
2. Roof color – N/A
3. Countertop color / style – N/A

Labor ONLY Pricing of the (55) modular unit(s) specified above is based on the Scope of Work outline in this document excluding Tax and Shipping come to a total Estimated Price of :

## $1,600,000

### One Million Six Hundred Thousand Dollars and Zero Cents

This estimate is based on the specifications outlined above. Any deviation from the above specification is strictly an exclusion of the above listed price and will be subject to a change order in the event of a change. Variations in materials and/or design may affect the final cost of construction. Transform LLC will update the quote and the contract amount will be revised based upon the final design approved by the Client & the State of Washington. Course of construction deviations and alterations from the approved design and/or plans will require an addendum to the State of Washington. All costs of the addendum and change in materials will be the responsibility of the Client.

TR 00094

# EXHIBIT 3

**Rice Insurance, LLC**
1400 Broadway
Bellingham, WA, 98225

# c o n f i d e n t i a l
# fax

| | |
|---|---|
| *To:* | **RPS---ISABELLE CHENTIL** |
| *Fax Number:* | +1 (877) 7776329 |
| | |
| *From:* | **Jackie James** |
| *Fax Number:* | 360-734-1173 |
| *Business Phone:* | 360-734-1161 |
| *Home Phone:* | |
| | |
| *Pages:* | 3 |
| *Date/Time:* | 5/21/2009 2:45:06 PM |
| *Subject:* | TRANSFORM LLC |

NEW LOSS

# ACORD® GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM

| | | DATE (MM/DD/YYYY) |
|---|---|---|
| | | 5/21/2009 |

| AGENCY | PHONE (A/C, No, Ext): (360) 734-1161 | NOTICE OF OCCURRENCE | DATE OF OCCURRENCE AND TIME | X AM | DATE OF CLAIM | PREVIOUSLY REPORTED |
|---|---|---|---|---|---|---|
| Rice Insurance LLC | | NOTICE OF CLAIM | 10/1/2008 | 12:00 PM | 10/1/2008 | YES   NO |
| 1400 Broadway | | EFFECTIVE DATE | EXPIRATION DATE | POLICY TYPE | | RETROACTIVE DATE |
| P.O. Box 639 | | 2/13/2008 | 2/13/2009 | X OCCURRENCE   CLAIMS MADE | | |
| Bellingham        WA 98227 | | COMPANY | NAIC CODE: | MISCELLANEOUS INFO (Site & location code) | | |
| FAX (A/C, No): (360) 734-1173 | | Indian Harbor Insurance Co | | | | |
| E-MAIL ADDRESS: tim@riceinsurance.com | | POLICY NUMBER | | REFERENCE NUMBER | | |
| CODE:          SUB CODE: | | ESG0022250 | | | | |
| AGENCY CUSTOMER ID: 00020064 | | | | | | |

| INSURED | | | CONTACT | CONTACT INSURED | WHERE TO CONTACT |
|---|---|---|---|---|---|
| NAME AND ADDRESS | SOC SEC # OR FEIN: | | NAME AND ADDRESS | | |
| Transform LLC, DBA: Equilateral Holdings LLC | | | BOO MARIS | | |
| 11857 Bay Ridge Rd. | | | | | WHEN TO CONTACT |
| Burlington        WA 98223-3613 | | | | | |
| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) | | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) 360-755-9130 | |
| CELL PHONE (A/C, No) | E-MAIL ADDRESS | | CELL PHONE (A/C, No) | E-MAIL ADDRESS | |

## OCCURRENCE

| | | | AUTHORITY CONTACTED |
|---|---|---|---|
| LOCATION OF OCCURRENCE (include city & state) | 3770 SUNCADIA TRAIL | CLE ELUM        WA | |
| DESCRIPTION OF OCCURRENCE (Use separate sheet, if necessary) | INSURED DELIVERED 57 OR 58 BUILDING MODULES TO CLAIMANT AND THEY WERE ALL DEFECTIVE.   THE CLAIMANT HAD TO REBUILD.   THERE WERE SCREWS IN PIPES, ELECTRICAL PROBLEMS ETC. | | |

## POLICY INFORMATION

| COVERAGE PART OR FORMS (Insert form #s and edition dates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| GENERAL AGGREGATE | PROD/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | PD BI |
| 2,000,000 | 2,000,000 | 1,000,000 | 2,000,000 | 100,000 | 5,000 | PER CLAIM/OCC | SI/BI DED |
| UMBRELLA/EXCESS | UMBRELLA   EXCESS   CARRIER: | | | LIMITS: | AGGR | | |

## TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER   TENANT   OTHER: | TYPE OF PREMISES |
|---|---|---|
| OWNER'S NAME & ADDRESS (if not insured) | | OWNER'S PHONE (A/C, No, Ext): |
| PRODUCTS: INSURED IS | MANUFACTURER   VENDOR   OTHER: | TYPE OF PRODUCT |
| MANUFACTURER'S NAME & ADDRESS (if not insured) | | MANUFACT PHONE (A/C, No, Ext): |
| WHERE CAN PRODUCT BE SEEN? | | |
| OTHER LIABILITY INCLUDING COMPLETED OPERATIONS (Explain) | | |

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | MITZEL CORP       C/O DAN MITZEL | PHONE (A/C, No, Ext) 360-404-2050 |
|---|---|---|
| | 1111 CLEVELAND AVE STE 201       MT VERNON        WA 98273 | PHONE (A/C, No, Ext) 360-661-2237 CELL |
| AGE   SEX   OCCUPATION | EMPLOYER'S NAME & ADDRESS | |
| DESCRIBE INJURY | WHERE TAKEN | WHAT WAS INJURED DOING? |
| FATALITY | | WHEN CAN PROPERTY BE SEEN? |
| DESCRIBE PROPERTY (Type, model, etc.) CONDOS | ESTIMATE AMOUNT   WHERE CAN PROPERTY BE SEEN? | |

## WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|
| | | |

| REMARKS   ALSO CONTACT JEFF HANSELL 360-661-2120   JEFF@HM-HOMES.COM | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|
| REPORTED BY   BOO MARIS | REPORTED TO   TIM DICKERSON | |

ACORD 3 (2007/01)
INS003 (200701101)

Page 1 of 2        © ACORD CORPORATION 1986-2007.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

TR 00080

## Applicable in Arizona

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## Applicable in Arkansas, Delaware, District of Columbia, Kentucky, Louisiana, Maine, Michigan, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington and West Virginia

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In DC, LA, ME, TN, VA and WA, insurance benefits may also be denied.

## Applicable in California

For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## Applicable in Colorado

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

## Applicable in Florida and Idaho

Any person who Knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.*
* In Florida - Third Degree Felony

## Applicable in Hawaii

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

## Applicable in Indiana

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## Applicable in Minnesota

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## Applicable in Nevada

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

## Applicable in New Hampshire

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## Applicable in Ohio

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## Applicable in Oklahoma

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

ACORD 3 (2007/01)
INS003 (200701).01

TR 00081

# EXHIBIT 4



Bennett Bigelow & Leedom, P.S.

Timothy E. Allen
Attorney
tallen@bbllaw.com

Law Offices

June 26, 2009

<u>VIA CERTIFIED MAIL (RETURN RECIEPT
REQUESTED) AND REGULAR MAIL</u>

Boo Maris
Transform LLC; Equilateral Holdings LLC
11857 Bay Ridge Road
Burlington, WA 98233

BD Service Corporation
Equilateral Holdings LLC Registered Agent
300 N Commercial St.
Bellingham, WA 98225

Tim Dickerson
Rice Insurance LLC
400 Broadway
P.O. Box 639
Bellingham, WA 98227

William Maris
Equilateral Holdings LLC
Managing Member
114 West Magnolia #501
Bellingham, WA 98225

G. Dennis Archer
Transform LLC Registered Agent
1621 Cornwall Ave.
Bellingham, WA 98225

Re:  Insured:        Transform LLC, dba Equilateral Holdings LLC
     Claimant:       Mitzel Corp.
     Issuing Company: Indian Harbor Insurance Co.
     Policy No.:     ESG0022250
     XL File No.:    09118281

<u>INITIAL DETERMINATION OF NON-COVERAGE AND RESERVATION OF RIGHTS</u>

Dear Policyholder and Policyholder's agents:

   Bennett Bigelow & Leedom, P.S. ("BB&L") represents the interests of XL Specialty
Insurance Company ("XL"). XL has received notice of a claim ("Claim") against Transform
LLC, dba Equilateral Holdings LLC, brought under Policy No. ESG0022250 ("the Policy"). XL
has assigned Claim Number 09118281 to this claim; please include this Claim Number in all
future communications regarding this matter. The purpose of this letter is to advise you of XL's
initial determination regarding application of the Policy to the claim asserted by Mitzel Corp.
For the reasons describe below, the allegations and damages sought in the Claim may not be
within the coverage afforded by the Policy. This initial determination of non-coverage is based
on the information which XL has received to date. XL reserves the right to supplement or
modify this letter as XL deems necessary. All rights of XL are hereby reserved.

TR 00095

## I.    THE CLAIM

The Claim alleges:

Insured delivered 57 or 58 building modules to claimant and they were all
defective.  The claimant had to rebuild.  There were screws in pipes, electrical
problems, etc.

The alleged date of loss is October 1, 2008.  You first reported the claim to XL on May 21, 2009.

## II.    THE POLICY

The Policy provides in relevant part as follows:

COMMERCIAL GENERAL LIABLITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy
carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named insured
shown in the Declarations, and any other person or organization qualifying as a
Named insured under this policy.  The words "we", "us" and "our" refer to the
company providing this insurance.

The word "insured" means any person or organization qualifying as such under
Section II – Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning.
Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGES LIABLITY

1. Insuring Agreement

  a. We will pay those sums that the insured becomes legally obligated to pay as
damages because of "bodily injury" or "property damage" to which this insurance
applies.  We will have the right and duty to defend the insured against any "suit"
seeking those damages.  However, we will have no duty to defend the insured
against any "suit" seeking damages for "bodily injury" or "property damage" to

TR 00096

Transform LLC dba Equilateral Holdings LLC
June 26, 2009
Page 3

which this insurance does not apply. We may, at our discretion, investigate any
"occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III –
Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable
limit of insurance in the payment of judgments or settlement under Coverages A
or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered
unless explicitly provided for under Supplementary Payments – Coverages A and
B.

Subject to the Policy's terms, conditions, and exclusions, Coverage A of the Policy
provides coverage for those sums the insured is "legally obligated to pay" as "damages" because
of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in
the Policy, and applies only to "bodily injury" and "property damage" that occur during the
policy period. Policy, I(A)(1)(b)-(e). The Policy identifies the named insured as Transform
LLC; Equilateral Holdings LLC. Indian Harbor Insurance Company issued the Policy for the
policy period February 13, 2008 through February 13, 2009. The Policy has general aggregate
limits of insurance (other than Product-Completed Operations) of $2 million, and the aggregate
limit of insurance for Products-Completed Operations is $2 million. The Policy has "each
occurrence" limits of insurance of $1 million.

Pursuant to Deductible Endorsement ESL 453 0107 (2006), the Policy is subject to a
deductible of $5,000 for Bodily Insurance Liability and/or Property Damage Liability Combined,
which applies on a per claim basis.

## III.    INITIAL DETERMINATION OF NON-COVERAGE

The Claim as presently articulated does not appear to implicate coverage afforded by the
Policy. Specifically, the Claim as presently articulated falls outside of coverage based on a
number of policy exclusions, as follows:

### A.    Definition of "Occurrence"

The Policy defines "occurrence" as follows:

"Occurrence" means an accident, including continuous or repeated exposure to
substantially the same general harmful conditions.

Policy, V(13). The Policy does not provide coverage if the alleged "property damage" was not caused by an "occurrence." Here, the Policy does not cover the claim for defects in the modular built structures manufactured by Transform LLC and delivered to Mitzel Corp. Defects or deficiencies in construction or work or materials are not caused by an "occurrence" as that term is defined in the Policy.[1]

### B. Exclusion K: Property Damage to Your Product Arising Out of It or Any Part of It

Exclusion K provides for an exclusion from policy coverage for Damage To Your Product: "'Property damage' to 'your product' arising out of it or any part of it." Section V(17) of the Policy defines "[p]roperty damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured." Policy, V(17). The Policy defines "[y]our product" as

> (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>> (a) you;
>> (b) others trading under your name; or
>> (c) a person or organization whose business or assets you have acquired; and
> (2) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Policy, V(21).

The building modules delivered to Mitzel Corp. are considered your "product" under Washington law. While "product" itself is not defined in the Policy, Washington courts define "products" for purposes of CGL policies as "goods which are processed or assembled in the ordinary channels of commerce."[2] In *Olympic Steamship Co., Inc. v. Centennial Ins., Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), the Supreme Court of Washington considered a "your product" exclusion with language essentially identical to that in the Policy.[3] The court held that "an 'insured's product' refers to goods or products in which the insured trades or deals, including

---

[1] *See, e.g., Hayden v. Mutual of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64-65, 1 P.3d 1167 (2000) (stating "overriding principle" that CGL policy holders "have purchased a general liability policy, not 'a performance bond, product liability insurance, or malpractice insurance'") (citing *Reliance Ins. Co. v. Mogavero*, 640 F.Supp. 84, 85 (D.Md. 1986)); *Aetna Cas. and Sur. Co. v. M & S Industries, Inc.*, 64 Wn. App. 916, 921, 827 P.2d 321 (1992) (noting a CGL policy "insures against damage to tangible property of another, not the insured's product"); *Reliance* 640 F.Supp. at 86 (an "'occurrence' does not include the normal, expected consequences of poor workmanship").
[2] *See, e.g., Westman Ind. Co. v. Hartford Ins. Group*, 51 Wn. App. 72, 78, 751 P.2d 1242 (1988), *review denied*, 110 Wn.2d 1036 (1988) (citing *Comm'n Co. v. Guaranty Nat'l Ins. Co.*, 41 Wn. App. 425, 431, 700 P.2d 1188 (1985)).
[3] *Olympic Steamship*, 117 Wn.2d at 42 ("'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof").

goods created or manufactured by the insured."[4] Washington courts consider even entire buildings defective products for purposes of such product exclusions.[5]

Here, Exclusion K puts the Claim outside the scope of coverage. Under that exclusion, "[w]hen an insured becomes liable for damage to its own tangible product that occurs either by physical injury or loss of use, and such damage arises out of the product, the insured is not covered."[6] In *National Clothing Co., Inc. v. Hartford Cas. Ins. Co.*, 135 Wn. App. 578, 145 P.3d 394 (2006), Division I of the Washington Court of Appeals explained as follows:

> The rationale for a "damage to your product" exclusion in a comprehensive general liability policy is set forth in *Weedo* [*v. Stone-E-Brick*, 81 N.J. 233, 405 A.2d 788 (1979)], where the damage claimed arose out of faulty workmanship by a masonry contractor. The court explained that indemnity is typically available only when the insured's work or product, once relinquished or completed, accidentally causes injury to persons or damage to other property. It is not available to cover the cost of repair or replacement of work or products that do not satisfy contract warranties:
>
> > The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.
>
> *Weedo*, 81 N.J. at 239, 405 A.2d 788. In other words, when the product is "not that for which the damaged person bargained," the damage is the result of an ordinary business risk assumed by the insured. *Weedo*, 81 N.J. at 240, 405 A.2d 788, citing D. Henderson, *Insurance Protection for Products Liability and Completed Operations-What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 418 (1971).[7]

---

[4] *Id.* at 50.
[5] *See, e.g., Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 302, 914 P.2d 119, *review denied*, 130 Wn.2d 1003, 925 P.2d 989 (1996) ("Washington case law interprets such product exclusion to encompass entire buildings as defective products. This view is consistent with Washington courts' reluctance to interpret such general liability policies as a form of performance bond, product liability insurance, or malpractice insurance.").
[6] *National Clothing Co., Inc. v. Hartford Cas. Ins. Co.*, 135 Wn. App. 578, 586, 145 P.3d 394 (2006).
[7] *Id.* at 586.

    **C.    Exclusion L: Property Damage to Your Work Arising Out of It or any Part of It and Included in PCOH, or in the alternative, Exclusion J: Damage to Property**

Exclusion L, "Damage To Your Work," excludes from coverage:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Policy, I(A)(2)(l). The Policy, in turn, defines "Your work" as:

(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

Policy, V(22)(a). "Your work" includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work'; and
(2) The providing of or failure to provide warnings or instructions.

Policy, V(22)(b). Endorsement #003, entitled "Products-Completed Operations Hazard Scheduled Product or Work," reads as follows:

This insurance applies only to "bodily injury" and "property damage" arising out of "your product" or "your work" shown in the Schedule below:

Your Product: MANUFACTURING OF MODULAR BUILT STRUCTURES

Your Work: MANUFACTURING OF MODULAR BUILT STRUCTURES

Policy, Endorsement #003. Finally, as noted *supra*, the Policy defines "[p]roperty damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured." Policy, V(17).

    Here, the claim by Mitzel Corp. falls outside coverage under Exclusion L. Initially, the building modules fall within the scope of the products completed operations hazard (PCOH). The PCOH includes the manufacturing of modular built structures, and Mitzel Corp.'s claim is

that the modular built structures manufactured by Transform LLC and delivered to Mitzel were defective due to physical injury to those structures. Moreover, based on the facts available to XL to date, the building modules delivered to Mitzel Corp. were manufactured directly by Transform LLC and not by any subcontractor.

However, if the building modules do not fall within the scope of the PCOH, the claim would be still excluded under Exclusion J. That exclusion, entitled Damage to Property, excludes in relevant part coverage for "'Property damage' to... (6) that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Policy, I(A)(2)(j). The exclusion notes that "[p]aragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'." *Id.* As noted *supra*, if the building modules *are* included in the PCOH, then the claim is excluded under Exclusion L. If, however, the building modules *are not* included in the PCOH, then the claim is excluded under paragraph 6 of Exclusion J.

### D. Exclusion M: Impaired Property or Property Not Physically Injured

Exclusion M, Damage To Impaired Property Or Property Not Physically Injured, excludes coverage for

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Policy, I(A)(2)(m). "Impaired property" is defined in the policy as follows:

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

      b. Your fulfilling the terms of the contract or agreement.

Policy, V(8).

      The effect of this "impaired property" exclusion is to bar coverage for "loss of use" claims (1) when the loss was caused by the insured's poor workmanship or faulty materials; and (2) when there has been no physical injury to property other than the insured's work itself.[8] General liability insurance policies such as the Policy are not intended to be the equivalent of performance bonds.[9] Washington law is in accord with this general rule. In Washington, a CGL policy is designed to provide coverage for tort liability for injury to third parties and other property; it is not designed for contract liability resulting from the fact the product or completed work is not that for which the damaged party bargained. Washington courts have repeatedly held that a CGL policy is not a form of performance bond or malpractice insurance designed to shield a contractor from claims for faulty workmanship or a defective product.[10]

      Here, Exclusion M applies. Mitzel has claimed loss due to property damage to Transform LLC's product. Further, XL's investigation to date reveals that Mitzel is contemplating a claim for breach of contract and consequential business interruption damages allegedly caused by poor workmanship or faulty materials. Such damages would fall squarely within the terms of the exclusion.

    **E.**    **Exclusion N: Recall of Products, Work or Impaired Property Withdrawn or Recalled from Market**

      Exclusion N puts outside the scope of coverage the "Recall of Products, Work or Impaired Property." Policy I(A)(2)(n). The policy excludes the following:

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> (1) "Your product"
> (2) "Your work"; or
> (3) "Impaired property."

---

[8] *See, e.g., Transcontinental Ins. Co. v. Ice Systems of America, Inc.,* 847 F. Supp. 947, 950 (M.D. Fla. 1994).
[9] *See, e.g., Auto-Owners Ins. Co. v. Reliance Ins. Co.,* 227 F. Supp. 2d 1248, 1263-64 (M.D. Fla. 2002) (interpreting Florida law and holding that under the new version of the CGL form there is no coverage "for both property damage as a result of defective construction and for the replacement or repair of the defective construction itself[.]"); *Kvaerner Metals Division v. Commercial Union Ins. Co.,* 825 A.2d 641, 655 (Pa. Super. Ct., 2003); *cf. Union Ins. Co. v. Hottenstein,* 83 P.3d 1196 (Colo. Ct. App. 2003).
[10] *See, e.g., Federated Serv. Ins. Co. v. R.E.W., Inc.,* 53 Wn. App. 730, 733-34, 770 P.2d 654 (1989); *Westman Indus. Co. v. Hartford Ins. Group,* 51 Wn. App. 72, 80-81, 751 P.2d 1242, *review denied,* 110 Wn.2d 1036 (1988).

Transform LLC dba Equilateral Holdings LLC
June 26, 2009
Page 9

If such product, work, or property is withdrawn or recalled from the market or
from use **by any person or organization** because of a known or suspected defect,
deficiency, inadequacy or dangerous condition in it.

Policy I(A)(2)(n) (emphasis added).

Here, XL's investigation to date indicates that Mitzel Corp. withdrew its impaired
property, the condominium project, from the market due to its claim that Transform LLC's work
and product were defective, deficient, inadequate or dangerous. As with Exclusion M, the clear
terms of Exclusion N put such damages claims outside of coverage under the Policy.

## IV. RESERVATION OF RIGHTS

XL will continue to investigate this Claim under a full reservation of rights. No act of
any company representative or agent of XL while investigation, defending, or otherwise
managing the Claim is intended to be a waiver of any right under or term of the Policy.

There may be information or pleadings in your possession and unknown to XL, or you
may receive information in the future, that you contend supports a conclusion contrary to that
articulated in this letter. In that event, please provide such materials to us and we will review
them as quickly as possible and, if appropriate, reconsider the present denial of coverage.
Should you receive notice of a lawsuit arising out of the Claim, please abide by the terms of the
Policy with respect to your duties under the Policy in the event of a lawsuit.

This correspondence and all prior communications with you are subject in all respects to
the terms and conditions of the Policy and do not and are not intended to modify any term of the
Policy. In addition, the Policy may not provide coverage for other terms and reasons not
specified in this letter, and XL reserves the right to assert such terms and reasons. All of XL's
rights under the Policy are reserved without exception, whether identified herein or otherwise.

You may wish to discuss this matter with your personal attorney. In any event, we
welcome the opportunity to speak with you regarding XL's position as described in this letter. I
can be reached at BB&L's general office number, (206)622-5511.

Very truly yours,

BENNETT BIGELOW & LEEDOM, P.S.

Timothy E. Allen

Cc:     Kerry Ebersole
{1929.00018/M9548331.DOC; 1}

2_TR 00103

# EXHIBIT 5

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP   2 2009    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT O. WASHINGTON
DEPUT'

IN THE
UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, A NORTH DAKOTA CORPORATION<br><br>Plaintiff/Petitioner<br><br>vs.<br><br>TRANSFORM LLC, A WASHINGTON CORPORATION; ET AL<br><br>Defendant/Respondent | Hearing Date:<br><br>CAUSE NO: **09-CV-01120-RSM**<br><br>DECLARATION OF SERVICE OF:<br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT REGARDING INSURANCE COVERAGE** |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **28th** day of **August, 2009**, at **12:33 PM**, at the address of **300 N COMMERCIAL** Street, **BELLINGHAM**, Whatcom County, WA **98225**; this declarant served the above described documents upon **EQUILATERAL HOLDINGS, LLC**, by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Debbie Nelson, IN THE OFFICE OF B.D. Service Corporation, REGISTERED AGENT, A female approx. 35-40 years of age 5'8"- 5'10" in height weighing 120-140 lbs with short blonde hair.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Service Fee Total: $

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this **31st day of August, 2009.**

_____

Bradley Walters, Reg. # 1-3792, Whatcom, WA

FOR: **BENNETT, BIGELOW, & LEEDOM, PS** ORIGIN/
REF: **1929-018**                                      St

**09-CV-01120-IFP**

# EXHIBIT 6

FILED _____ ENTERED
LODGED _____ RECEIVED

SEP 0 8 2009   LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

IN THE
UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, A NORTH DAKOTA CORPORATION | Hearing Date: |
| | CAUSE NO: **09-CV-01120-RSM** |
| Plaintiff/Petitioner | DECLARATION OF SERVICE OF: |
| | FIRST AMENDED COMPLAINT FOR DECLARATORY |
| vs. | JUDGMENT REGARDING INSURANCE COVERAGE |
| TRANSFORM LLC, A WASHINGTON CORPORATION; ET AL | |
| Defendant/Respondent | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **1st** day of **September, 2009**, at **1:45 PM**, at the address of **1621 CORNWALL Avenue, BELLINGHAM, Whatcom** County, **WA 98225**; this declarant served the above described documents upon **TRANSFORM, LLC**, by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Ellen Sheen, Personal Assistant To Registered Agent G. Dennis Archer, A female approx. 30-35 years of age 5'6"-5'8" in height weighing 100-120 lbs with blonde hair.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Service Fee Total: $

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this **2nd** day of **September, 2009**.

_____
William LeCompte, Reg. # 1-3792, Whatcom, WA

FOR: **BENNETT, BIGELOW, & LEEDOM, PS** ORIGIN
REF: 1929-018

**09-CV-01120-EXH**

# EXHIBIT 7



Bennett Bigelow & Leedom, P.S.

Timothy E. Allen
Attorney
tallen@bbllaw.com

Law Offices

July 8, 2009

<u>**VIA MESSENGER AND REGULAR MAIL**</u>

Zach McIsaac
Stanislaw Ashbaugh
4400 Columbia Center
701 Fifth Avenue
Seattle, WA 98104

Re:  Your Client:        East AHM LLC
     XL's Insured:       Transform LLC, dba Equilateral Holdings LLC
     Claimant:           Mitzel Corp.
     Issuing Company:    Indian Harbor Insurance Co.
     Policy No.:         ESG0022250
     XL File No.:        09118281

Dear Zach,

    On Tuesday, June 30, 2009, you called me to appear on behalf of your client, who you stated was East AHM LLC. You stated you believed your client has additional insured status under Policy No. ESG0022250 ("Policy") issued by Indian Harbor Insurance Co. to Tranform LLC, dba Equilateral Holdings LLC. As you know, Mitzel Corp. ("Mitzel") has made a claim against Transform LLC under the Policy ("Claim"). Bennett Bigelow & Leedom, P.S. ("BB&L") represents the interests of XL Specialty Insurance Company ("XL") in this matter. You indicated your client has an interest in the Claim, and you requested a copy of the Reservation of Rights letter recently sent to Transform LLC with respect to the Claim, along with a complete copy of the Policy.

    At this time XL requests that you explain how your client is related to the Claim, and that you forward to me any documentation, including copies of any relevant contracts, that would support your client's claim to additional insured status under the Policy. XL is unaware of any facts that would support additional insured status for your client under the Policy, or how additional insured status would trigger coverage under the Policy in favor of your client. However, XL is still investigating the Claim, and in compliance with its duty of good faith to its insureds, and in light of your client's claim to additional insured status under the Policy, XL is making available to you both a copy of the Reservation of Rights letter sent to Transform LLC as well as a complete copy of the Policy (see attached).

    XL will continue to investigate the Claim under a full reservation of rights. No act of any company representative or agent of XL while investigation, defending, or otherwise managing the Claim is intended to be a waiver of any right under or term of the Policy. There may be

TR 00104

information or pleadings in your possession and unknown to XL, or you may receive information in the future, that you contend supports your client's status as an additional insured under the Policy and/or that triggers coverage in favor of your client under the Policy. In that event, please provide such material to me and I will review it as quickly as possible. I can be reached at BB&L's general office number, (206)622-5511.

    This correspondence and all prior communications with you are subject in all respects to the terms and conditions of the Policy and do not and are not intended to modify any term of the Policy.

Very truly yours,

BENNETT BIGELOW & LEEDOM, P.S.

Timothy E. Allen

TEA:crb
Cc:   Kerry Ebersole
Attachments

{1929.00018/M9561791.DOC; 2}

TR 00105

# EXHIBIT 8

*509·674·6599*



# Invoice

Tile Redi USA, LLC
4450 N.W. 126th Ave Suite 101
Coral Springs, Florida 33065
Tel. (954) 323-0125   Fax (954) 344-8064
Toll Free 800-232-6156

*PAID*

| Date | Invoice # |
|------|-----------|
| 8/1/2008 | 276923 |

| Customer Phone | (360)661-7848 |
|----------------|---------------|

| Bill To |
|---------|
| East AHM Development, LLC
202 Wright Avenue
Cle Elum, WA 98922 |

| Ship To |
|---------|
| East AHM Development, LLC
Purchasing Manager
11857 BAY RIDGE DR
BURLINGTON, WA 98233-3613
United States |

| PO # | Terms | | Ship Date | Pick Up Date | Delivery Date | Via |
|------|-------|--|-----------|--------------|---------------|-----|
| | Due on rece... | | 7/28/2008 | | | Estes |

| Quantity | Item | Description | U/M | Rate | Amount |
|----------|------|-------------|-----|------|--------|
| 27 | LAT300 | Laticrete Tile Setting Material | | 0.00 | 0.00 |
| 27 | 3760CBOBP-... | 37 inch D x 60 inch W, Integrated Center PVC Drain, Single Threshold on 60 inch Side | ea | 459.00 | 12,393.00T |

*What is cost?*

*Get Proposal from Tile Redi for 27 of the LAT300*

*+ 2 shower pans @ 459.00 each = 918.00 + 73.44 = 991.44*

### Thanks for your order..........

All sales are subject to the Tile Redi Standard Terms and Conditions which are hereby incorporated by this reference, and which supersede any contrary provisions.

| | |
|---|---|
| Subtotal | $12,393.00 |
| Sales Tax (0.0%) | $0.00 |
| Total | $12,393.00 |
| Payments/Credits | $-12,393.00 |
| Balance Due | $0.00 |

**www.tileredi.com**

 

| East AHM Development, LLC | Invoice number | 43608 |
|---|---|---|
| 202 Wright Ave. | Date | 8/31/2008 |
| Cle Elem, WA  98922 | | |

Contract: 0721138                                    Client ID: E1210
Suncadia Condos
Scope of Work:     Structural Engineering Services
                            Contact:Jeff Hansell

---

## 3370 B-1 Unit Modifications

|  |  |  |
|---|---|---|
| Labor subtotal | 2.00 | 400.00 |
| Item subtotal | | 400.00 |

## 6100 Construction Support

### Labor

| Employee Type | Hours | Rate | Amount |
|---|---|---|---|
| Principal Engineer 13 | 48.00 | 200.00 | 9,600.00 |
| Project Engineer 303 | 27.75 | 75.00 | 2,081.25 |
| Project Engineer 305 | 63.25 | 85.00 | 5,376.25 |
| Project Engineer 306 | 44.75 | 90.00 | 4,027.50 |
| Tech Designer 404 | 2.50 | 65.00 | 162.50 |
| Labor subtotal | 186.25 | | 21,247.50 |
| Item subtotal | | | 21,247.50 |

## 9900 Reimbursable Expense

### Reimbursable

| Vendor / Activity | Units | Rate | Amount |
|---|---|---|---|
| Other Vendor | | | |
| D Size Bond | 47.00 | 6.00 | 282.00 |
| Bond Copies - Size D | 161.00 | 1.32 | 212.52 |
| Mileage | 60.60 | 0.53 | 32.12 |
| Bond Copies - Size A | 281.00 | 0.09 | 25.29 |
| Travel Related Expenses | | | 4.13 |

601 W. Riverside, Suite 600 | Spokane, Washington, 99201 Phone (509) 455-4448

S e r v i c e   I n n o v a t i o n   V a l u e

TR  00109